# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

|  |  |  |
|---|---|---|
| **MARK HOLLAND, as Natural Father**<br>**of JASON LAMAR HOLLAND,**<br>**deceased; CINDY HOLLAND,**<br>**as Natural Mother of JASON LAMAR**<br>**HOLLAND, deceased; and**<br>**MICHAEL A. JONES, ESQ.,**<br>**as Personal Representative of the**<br>**ESTATE OF JASON LAMAR**<br>**HOLLAND, deceased,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 7:05-cv-85 (HL) |
| | : | |
| **ALLEN GAY, JOEY WHITLEY,**<br>**ALDENE TYSON, TONY HUTTO and**<br>**ARMOND MORRIS, Individually and**<br>**as members of the Irwin County Board**<br>**of Commissioners, and TOMMY**<br>**TUCKER, Individually and as**<br>**COUNTY ROAD SUPERINTENDENT**<br>**FOR IRWIN COUNTY, GEORGIA,** | : | |
| | : | |
| Defendants | : | |

## ORDER

After their son was killed in a car accident in Irwin County, Georgia, Mark and Cindy

Holland, along with Michael A. Jones, as representative of the estate of Jason Holland,

brought this action against Irwin County's commissioners and road superintendent.  All

Defendants moved for summary judgment [doc 18] as to all claims against them.  Plaintiffs

subsequently moved for summary judgment [doc 38] as to the issue of liability.  The Court,

having considered the arguments of the parties, hereby grants Defendants' Motion for

Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment, as more fully set forth below.

## I.     FINDINGS

Big Creek Road is a partially paved road located in Irwin County, Georgia, and maintained by the County.  After its intersection with Eisenhower Road, Big Creek Road becomes a dirt road when traveling north.  At the same point, Big Creek Road also begins to curve to the left.  Before crossing from the paved to the unpaved portion of Big Creek Road, drivers are required to stop.  On July 28, 2003, the intersection was marked with a stop sign, which was worn and faded.  No other signs or markers warned motorists of the stop ahead or of the change in road conditions.

Jason Lamar Holland died following a car wreck that occurred on Big Creek Road.  At approximately 12:00 a.m. on July 28, 2003, Holland was traveling north on Big Creek Road at the point where it intersects with Eisenhower Road.  Holland did not stop at the intersection of Big Creek Road and Eisenhower Road.  When Holland's car traveled from the paved portion to the unpaved portion of the road, he lost control of the car, which then skidded and overturned.  Holland died as a result of injuries sustained in the accident, either instantly upon impact, or shortly thereafter.  There were no eyewitnesses who observed Holland's accident.

Believing that their son's death resulted from the County's failure to maintain the stop sign in good condition at the intersection, as well as the failure to post warnings or other signs, Holland's parents and the representative of his estate brought the lawsuit at issue here.

They named as Defendants the members of the Irwin County Board of Commissioners, in their individual and official capacities, and also named Tommy Tucker, individually and in his capacity as the Road Superintendent for Irwin County.  Plaintiffs invoked the Court's federal question jurisdiction by bringing claims under 42 U.S.C.A. § 1983.  Plaintiffs, who are citizens of the State of Florida, also invoked the Court's diversity jurisdiction by bringing state law claims.  Defendants have now moved for summary judgment as to all claims against them; Plaintiffs have moved for summary judgment on the question of liability.

## II.    CONCLUSIONS OF LAW

### A.    Federal Claims

In the portion of their complaint labeled as "Part VI," Plaintiffs bring a claim for damages under 42 U.S.C.A. § 1983.  Plaintiffs' § 1983 claim, in its entirety, is stated as follows:

> The actions of all defendants herein, subject said defendants to liability under the provisions of Title 42 USCA, Section 1983, Wrongful Death, Fourteenth Amendment, Substantive Due Process Deprivation of Life Claim. The failure of defendants to place a proper stop sign at said intersection and other acts as claimed herein, also constitutes a violation of the Equal Protection Clause of the United States Constitution as applied to the defendants herein by virtue of the Fourteenth Amendment to said Constitution.

(Compl. ¶ 37.)  Plaintiffs have failed to offer any additional detail as to their § 1983 claims. Therefore, the Court is left to guess whether Mark and Cindy Holland seek to bring their own claims under § 1983 or whether they or the representative of Holland's estate are seeking to bring on Holland's behalf any § 1983 claims he would have had prior to his death.  Under either theory, their claims fail.

3

1.      **Individual Claims of the Parents**

To the extent that Holland's parents are attempting to bring individual claims under 42 U.S.C.A. § 1983 for deprivation of their Fourteenth Amendment right to continued relationships with their son, such claims are foreclosed by the recent decision of the United States Court of Appeals for the Eleventh Circuit in Robertson v. Hecksel, 420 F.3d 1254 (11th Cir. 2005).  In Robertson, the appellate court held that a parent has no constitutionally protected liberty interest in a continued relationship with an adult child.  Robertson, 420 F.3d at 1255.  The court held, therefore, that a mother who sought to bring a § 1983 claim against government officials for the loss of her son had no cognizable due process interest that was protected under § 1983.  Likewise, in this case, Plaintiffs Mark and Cindy Holland have no constitutionally protected interest in a continued relationship with their adult son and, therefore, can show no violation of a constitutionally protected right such as would support individual claims under § 1983.

2.      **Surviving Claim of the Deceased**

In Georgia, where death results from constitutional violations, a § 1983 claim may be brought on behalf of a deceased to redress the constitutional injuries inflicted.[1]  *See*

---

[1] Such claims have been generically referred to as "wrongful death" claims.  In Georgia, a "wrongful death" claim is one brought by the surviving spouse, child, or parent to recover for the value of the life of the decedent.  Georgia law defines who is entitled to bring such a claim.  *See* O.C.G.A. §§ 51-4-1 to 51-4-5 (Lexis 2000).  The wrongful death provisions set forth at §§ 51-4-1 to 51-4-5 create a new cause of action for certain individuals for the value of a decedent's life.  Gilmere v. City of Atlanta, 737 F.2d 894, 898 n.8 (11th Cir. 1984).  A survival statute, however, permits survival of the tort claims which the deceased possessed the instant before he died.  Id.  Georgia's survival statute is set forth at O.C.G.A. § 9-2-41 (Michie 1982).  A § 1983 claim brought to redress the constitutional injuries to the deceased is more properly treated as a survival action.

Robertson, 420 F.3d at 1260-62 (discussing the decisions in Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), and Carringer v. Rodgers, 331 F.3d 844 (11th Cir. 2003)).  In this case Plaintiffs allege that Defendants' failure to place a proper stop sign or warning at the intersection served to violate rights guaranteed to Holland by the equal protection clause of the Fourteenth Amendment.  Plaintiffs also allege a substantive due process violation, as well as violations of federal statutory and regulatory law.  Defendants have raised the defense of qualified immunity as to the § 1983 claims brought against them in their individual capacities.  As to the § 1983 claims brought against them in their official capacities, Defendants contend that Eleventh Amendment immunity bars any claims against them.

### a.      Individual Capacity Claims

Section 1983 is intended to provide a remedy to those persons whose constitutional rights have been infringed upon by a state official's abuse of his position while that official is acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694 n.3 (1979)).  In order to establish a § 1983 claim, a plaintiff must first show a violation of a right secured by federal law.  Skinner v. City of Miami, 62 F.3d 344, 347 (11th Cir. 1995).  Therefore, the Court will

---

However, case law addressing § 1983 claims brought in Georgia on behalf of a deceased has blurred the distinction between a "wrongful death" claim and a "survival action." *See, e.g.,* Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961). *See also* Carringer v. Rodgers, 331 F.3d 844 (11th Cir. 2003), *and* Robertson v. Hecksel, 420 F.3d 1254 (11th Cir. 2005).

first undertake to examine the federal rights that are implicated by this case.

### i.    Federal Constitutional Rights

As noted previously, Plaintiffs' complaint alleges a "Substantive Due Process Deprivation of Life Claim" under the Fourteenth Amendment. (Compl. ¶ 37.) The deprivation of life, without more, cannot give rise to a claim under § 1983. Dollar v. Haralson County, Ga., 704 F.2d 1540, 1543 (11th Cir. 1983). Thus, insofar as Plaintiffs' "Section 1983, Wrongful Death, Fourteenth Amendment, Substantive Due Process Deprivation of Life Claim" is an attempt to hold Defendants liable under § 1983 for a violation of the Fourteenth Amendment because Holland died on a county road, such allegations are insufficient to sustain a claim. See Dollar, 704 F.2d at 1543 ("Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983."). See also Cannon v. Taylor, 782 F.2d 947, 949 (11th Cir. 1986) (citing Dollar and holding that fact that deceased died in a car wreck allegedly caused by the negligence of a police officer was not enough to give rise to a constitutional claim under § 1983). Plaintiffs have failed to provide evidence sufficient to sustain a substantive due process claim.

In addition to their substantive due process argument, Plaintiffs allege that the failure of Defendant to place a proper stop sign at the intersection served to violate the equal protection clause of the Fourteenth Amendment. Plaintiffs have offered nothing that supports their claim that Defendants violated Holland's right to equal protection under the Fourteenth Amendment. Among other things, Plaintiffs have failed to identify any differential treatment

6

accorded Jason Holland by Defendants such as would support an equal protection claim. Furthermore, Plaintiffs have failed to come forward with any evidence of discriminatory intent on the part of Defendants–a necessary prerequisite to an equal protection claim under § 1983.  *See* Parks v. City of Warner Robins, Ga., 43 F.3d 609, 616 (11th Cir. 1995). Accordingly, Plaintiffs' equal protection claim also fails.

### ii.    Federal Statutory Law

In Maine v. Thiboutot, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504 (1980), the Supreme Court of the United States affirmed that the "§ 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law."  Cases decided after Thiboutot have suggested that a § 1983 claim can be premised on a failure to follow a federal regulation.  *See, e.g.,* Wright v. City of Roanoke Redev. & Housing Auth., 479 U.S. 418, 432, 107 S. Ct. 766, 775 (1987) (finding that statute and interim regulations authorized private right of action under § 1983).   Recently, however, the Court clarified the showing a claimant must make in order to proceed under § 1983 for a violation of federal statutory law.

In Gonzaga Univ. v. Doe, 536 U.S. 273, 122 S. Ct. 2268 (2002), the Supreme Court held that a private right of action to enforce provisions of the Family Educational Rights and Privacy Act of 1974 was foreclosed because the relevant provisions of the statute "create no personal rights to enforce under 42 U.S.C. § 1983."  Id. at 276, 122 S. Ct. at 2272.  In reaching its result, the Court emphasized that only federal rights, and not merely benefits or interests may be enforced through § 1983.  Therefore, in order to determine whether a statute

7

confers rights enforceable under § 1983, a court "must first determine whether Congress *intended to create a federal right*." Id. at 283, 122 S. Ct. at 2275.  As the Court explained, "[w]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Id. at 286, 122 S. Ct. 2277.

Here, Plaintiffs argue that their § 1983 claim is derived from 23 U.S.C.A. § 402, which provides, in part, as follows:

> Each State shall have a highway safety program approved by the Secretary, designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom.  Such programs shall be in accordance with uniform guidelines promulgated by the Secretary [of Transportation]. Such uniform guidelines shall be expressed in terms of performance criteria.

23 U.S.C.A. § 402(a) (West Supp. 2006).  Plaintiffs further contend that the adoption of the Manual on Uniform Traffic Control Devices ("MUTCD") by the Federal Highway Administration resulted in a federal duty on the part of Defendants to establish procedures for maintaining County roads.  Plaintiffs apparently rely on 23 C.F.R. § 655.603(a), which provides, "The MUTCD approved by the Federal Highway Administrator is the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel in accordance with 23 U.S.C. 109(d) and 402(a)."  23 C.F.R. § 655.603(a) (2006).

Review of § 402 reveals that it is directed at the states and not counties or other municipal governments.  Furthermore, review of § 402 makes clear that is intended to serve as a means for improving safety on highways through the implementation of programs and

studies.  It is not a directive to the counties on how to manage their road programs. Therefore,  the Court finds that § 402 does not impose a duty on Defendants, the failure of the performance of which would give rise to a violation under § 1983.  More importantly, nothing in the text of the statute suggests that it was intended to create new individual rights for citizens affected by the statute.

Similarly, nothing in 23 C.F.R. § 655.603 suggests that it was intended to create new individual rights.  To the contrary, § 655.603(a) provides that the national MUTCD is approved "for application on any highway project in which Federal highway funds participate and on projects in federally administered areas where a Federal department or agency controls the highway or supervises the traffic operations."  23 C.F.R. § 655.603(a) (2006).  Plaintiff has offered nothing to suggest that a "Federal department or agency controls" Big Creek Road.

Furthermore, § 655.603(b) provides that "[w]here State or other Federal agency MUTCDs or supplements are required, they shall be in *substantial conformance* with the national MUTCD."  23 C.F.R. § 655.603(b) (2006) (emphasis added).  Thus, to the extent that MUTCD governs the standards in the State of Georgia, the State need only be in "substantial conformance."  Because § 655.603(b) is couched in precatory, rather than mandatory terms, it is insufficient to impose a binding obligation on the State.  Therefore, it is insufficient to create an individual right.  *See* Blessing v. Freestone, 520 U.S. 329, 340-41, 117 S. Ct. 1353, 1359 (1997) (holding that as part of three-part test for determining whether a statutory provision gives rise to a federal right, the statute must unambiguously

impose a binding obligation on the States).  *See also* <u>Daye v. Commonwealth of Pa.</u>, 483 F.2d 294, 299 (3d Cir. 1973) (affirming district court's conclusion that "neither the Federal-Aid Highway Act nor the Highway Safety Act create an implied cause of action to recover damages for personal injuries sustained as a result of a violation of the standards set forth therein or regulations promulgated thereunder").

Plaintiffs have offered the Court nothing that would satisfy the standards set forth in <u>Gonzaga</u> and would show that in enacting 23 U.S.C.A. § 402 that Congress intended to create new individual rights that can be vindicated under § 1983.  Nor are such rights evident or implied under 23 C.F.R. § 655.603(a).  Accordingly, Plaintiffs have failed to show that they are entitled to proceed under § 1983 for violations of statutory or regulatory law.

In view of the foregoing, the Court finds that Plaintiffs have failed to show a violation of a right secured by federal law.  Therefore, all Defendants are entitled to summary judgment as to those claims brought against them in their individual capacities under § 1983.

### b.    Official Capacity Claims

It is well established that § 1983 suits against government officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2036 n.55 (1978). *See also* <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878 (1985); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam).  Thus, even though Plaintiffs' complaint does not name Irwin County as a defendant, Plaintiffs'

claims against the members of the Irwin County Board of Commissioners in their official capacities are the equivalent of claims against the County. Defendants contend the doctrine of Eleventh Amendment immunity bars Plaintiffs' § 1983 claims against the County. Defendants are mistaken.

Eleventh Amendment immunity does not extend to counties. Thus the Eleventh Amendment does not bar suits brought under § 1983 against county commissioners in their official capacities:

> [C]ontrolling law makes it abundantly clear that the County enjoys neither Eleventh Amendment nor state law sovereign immunity [as to § 1983 claims]. As to the former, it is by now well established that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S. Ct. 568 (1977) (citation omitted). Accordingly, "the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "'slice of state power.' " Hess [v. Port Auth. Trans-Hudson Corp.], 513 U.S. 30, 43, 115 S. Ct. 394, 402 (citation omitted); see also Hutton v. Strickland, 919 F.2d 1531, 1542 (11th Cir.1990) ("This court specifically has recognized that the Eleventh Amendment does not prevent an award of damages against a county.").

Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298, 1314 (11th Cir. 2005). Because Eleventh Amendment immunity is not available to Defendants, the Court must consider whether they are otherwise entitled to summary judgment on Plaintiffs' § 1983 claims.

Plaintiffs contend the County is liable under § 1983 "because of [its] policy and

custom of not establishing and following a legally required protocol for the identification, the replacement, and the maintenance of defective traffic control devices." (Pls.' Mem. Resp. Defs.' Mot. Summ. J. at 12.)  Local governments can be subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38.  Local government liability is not predicated on a theory of *respondeat superior*, however.  Rather, a plaintiff seeking to succeed on such a claim must show that the policy or practice is the "moving force of the constitutional violation" at issue.  Id. at 694, 98 S. Ct. at 2038.

Here, Plaintiffs have offered evidence demonstrating that the County had no procedure in place for inspecting, repairing, replacing, or maintaining traffic control devices such as the traffic sign located at the intersection of Big Creek Road and Eisenhower Road. However, this Court's conclusion in the preceding section–that Plaintiffs have failed to show a violation of a right secured by federal law–forecloses any claim for liability against the County.  As the Supreme Court has noted, a plaintiff has no right to recover against a governmental entity under § 1983 when there has been a determination that no constitutional injury has been inflicted:  "If a person has suffered no constitutional injury at the hands of the [individual defendants], the fact that the departmental regulations might have *authorized* the [offensive conduct] is quite beside the point."  City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986).  Likewise, in this case, the fact that the County had no procedure in place for inspecting and maintaining traffic control devices "is quite beside

the point" given that no violation of a federal right resulted from the County's failure to implement a policy.  Accordingly, Defendants' Motion for Summary Judgment is granted as to the § 1983 claims against Defendants in their official capacities.

### B.      State Law Claims

Plaintiffs' complaint alleges, among other things, that Defendants were negligent in failing to maintain a policy of investigating and eliminating "inadequate signage." (Compl. Part III.)  Plaintiffs maintain Defendants failed to follow the requirements of O.C.G.A. § 32-4-41(1) and O.C.G.A. § 32-6-50(c).   (Compl. Part III.)   Plaintiffs also contend Defendants failed to comply with the directives of the Manual on Uniform Traffic Control Devices, and that such failure was willful.  (Compl. Part II.)  Defendants assert they are entitled to summary judgment because the doctrine of sovereign immunity bars Plaintiffs' state law tort claims against them in their official capacities and because the doctrine of official immunity bars Plaintiffs' state law tort claims against them in their individual capacities.

### 1.      Official Capacity Claims–Sovereign Immunity

The Georgia Constitution extends the doctrine of sovereign immunity to "the state and all of its departments and agencies."  Ga. Const. of 1983, Art. I, Sec. II, Para. IX(e). The Georgia Constitution further provides that the "sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly."  Ga. Const. of 1983, Art. I, Sec. II, Para. IX(e).  The Georgia appellate courts have concluded that the immunity afforded by Article I, Section II, Paragraph IX applies to counties and "thus

protects county employees who are sued in their *official* capacities." *See* Banks v. Happoldt, 608 S.E.2d 741, 743 (Ga. Ct. App. 2004), and cases cited therein.

Sovereign immunity may be waived. However, "'the waiver must be established by the party seeking to benefit from the waiver.'" Id. at 744 (quoting Athens-Clarke County v. Torres, 540 S.E.2d 225, 226 (Ga. Ct. App. 2000)). Here, Plaintiffs have advanced no argument nor made any showing that Irwin County's entitlement to sovereign immunity has been waived.[2] Accordingly, Defendants' Motion for Summary Judgment is granted as to the state law claims made against them in their official capacities.

## 2.    Individual Capacity Claims–Official Immunity

While the doctrine of sovereign immunity protects counties from official capacity state tort liability, county officials sued in their individual capacities may still be subject to suit. The Georgia Constitution of 1983, from which sovereign immunity for counties is derived, provides as follows with respect to the issue of individual liability:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the

---

[2]  In enacting the Georgia Tort Claims Act, the Georgia General Assembly created a limited waiver of the State's right to sovereign immunity. *See* O.C.G.A. §§ 50-21-1 to 50-21-29 (LexisNexis 2002 & Supp. 2005). However, counties are not included in the definition of "State" as that term is used in the Act. O.C.G.A. § 50-21-22 (LexisNexis Supp. 2005). Therefore, the waiver of sovereign immunity as to the County must stem from some other source.

performance or nonperformance of their official functions.  The provisions of this subparagraph shall not be waived.

Ga. Const. of 1983, Art. I, Sec. II, Para. IX(d).

The Supreme Court of Georgia has construed the term "official functions" in Paragraph IX(d) "to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."  Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  The court thus concluded in Gilbert that Paragraph IX(d) permits damage suits against government officers and employees for failure to perform ministerial duties; but where the act complained of arises from the performance of a discretionary function, such officers and employees, with limited exceptions, are immune from negligence claims.  Id.  *See also* Nelson v. Spalding County, 290 S.E.2d 915, 918 (Ga. 1982); Banks v. Happoldt, 608 S.E.2d 741, 744 (Ga. Ct. App. 2004) (citing Nelson).  The protection afforded to government officers and employees performing discretionary actions is referred to as official immunity, or qualified immunity.  Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001).  In order for an official's discretionary actions to be protected under the doctrine of official immunity, they must have been taken within the scope of the actor's official authority, and done without wilfulness, malice, or corruption.  Id.

In analyzing a state tort claim against a county official in his individual capacity, therefore, the first step is to determine whether the actions giving rise to the claim were ministerial or discretionary.  These terms have previously been defined by the Georgia appellate courts:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.  A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.  Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

Happoldt v. Kutscher, 567 S.E.2d 380, 382 (Ga. Ct. App. 2002).

With respect to the question of the liability of Defendants in their individual capacities on the state law claims, Plaintiffs argue in the alternative.  First, Plaintiffs contend Defendants failed to perform ministerial functions as required by law.  Alternatively, Plaintiffs contend Defendants acted with malice or intent to injure in the performance of their official functions.  The Court will discuss each argument in turn.

### a.    Ministerial Function

Plaintiffs maintain that "the law commands Irwin County and its employees to establish standards and procedures regulating the installation and maintenance of traffic control devices, and the duty to do so is a ministerial function over which the defendants had no discretion."  (Pls.' Mem Resp. Defs.' Mot. Summ. J. at 5.)   Plaintiffs contend that in failing to establish and follow inspection and maintenance procedures, Defendants failed to perform ministerial functions.

Counties are assigned the duty of designating which roads are to be a part of the county road system, O.C.G.A. § 32-4-40 (LexisNexis 2001).  The parties agree that Big Creek Road and Eisenhower Road were county maintained roads at the time of the accident.

16

(Defs.' Statement Material Facts No. 3.)  Counties are further charged with the duties of planning, improving, managing, controlling, constructing, and maintaining an adequate county road system.  O.C.G.A. § 32-4-41(1) (LexisNexis 2001).  Although each county is charged with the duty of maintaining its county road system, it must do so within certain guidelines determined by the State.  Specifically, counties are required to "place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic."  O.C.G.A. § 32-6-50(c)(1) (LexisNexis 2001).

The traffic-control devices required by § 32-6-50(c)(1) are to be "[i]n conformity with the uniform regulations of the [Georgia Department of Transportation]."  O.C.G.A. § 32-6-50(c) (LexisNexis 2001).  The Georgia Department of Transportation promulgates its own "uniform regulations governing the erection and maintenance on the public roads of Georgia of signs, signals, markings, or other traffic-control devices."  O.C.G.A. § 32-6-50(a) (LexisNexis 2001).  Pursuant to § 32-6-50(a), the Department of Transportation shall, insofar as practical, conform its uniform regulations "to the recommended regulations as approved by the American Association of State Highway and Transportation Officials."  O.C.G.A. § 32-6-50(a) (LexisNexis 2001).  The Georgia State Transportation Board adopted MUTCD as the uniform regulations governing the erection and maintenance of traffic-control devices as required by O.C.G.A. § 32-6-50(a).  (Pls.' Statement of Material Facts No. 2.)  Among other things, MUTCD directs that "a schedule for inspecting (both day and night), cleaning, and replacing signs should be established."  (MUTCD § 2A.22 marked as Ex. 1 to Tucker

17

Dep. taken Apr. 4, 2006.)

Thus, under state law, counties are to maintain such roads as they designate county roads, and they are to place and maintain traffic-control devices on the roads as are necessary to regulate, warn, or guide traffic.  To the extent that these things are done by the county, they are to be done in conformity with the regulations promulgated by the Georgia Department of Transportation, which has adopted MUTCD as its regulations.  These acts clearly call for the exercise of personal deliberation and judgment by county employees.  The entire process for placing traffic-control devices and maintaining them requires examination of the facts and reasoned conclusions, rather than the mere execution of a relatively simple, specific duty. As such, they are discretionary acts.

Plaintiffs argue, nevertheless, that Defendants had a nondiscretionary duty to put in place a procedure for the installation and upkeep of traffic-control devices.  Defendants concede that at the time of the accident, the County had no formal policy for inspecting and repairing county road signs. (Defs.' Mem. Law at 8.)  Rather, the County's procedure was to repair road signs on an "as-needed" basis, relying on members of the community to report problems with particular stop signs or intersections.  (Defs.' Mem. Law at 8.)

With respect to established policies, the Georgia appellate courts have concluded that "[w]hile the act of establishing a policy in the first place is discretionary, the acts of following established policies of inspecting and monitoring are ministerial tasks." Phillips v. Walls, 529 S.E.2d 626, 629 (Ga. Ct. App. 2000).  In Phillips, the Court of Appeals of Georgia found that the acts of inspecting a county road for vegetation obscuring the roadway

and  monitoring the accident history of an intersection were ministerial in nature because they were to be carried out pursuant to already established procedures.  Id.  The court thus concluded that the trial court properly considered whether the injuries complained of were caused by the negligent failure to perform these duties.

In Woodard v. Laurens County, 456 S.E.2d 581 (Ga. 1995), the Supreme Court of Georgia was confronted with a similar issue.  In Woodard, as here, the complaint was predicated upon allegations of negligent inspection and maintenance of a stop sign at an intersection.  Also in Woodard, as here, there were no contentions that the stop sign was actually missing or that the county employees failed to follow established procedures in failing to replace it.  Rather, as in Phillips, the contention was that the stop sign had become obscured by the limbs from nearby trees.  Plaintiffs in Woodard, like Plaintiffs here, argued that the procedures established by the county employees for discovering and removing such obstructions were inadequate.

In Woodard, the supreme court relied on its earlier decision in Nelson and concluded that the plaintiffs' allegation that the county's procedures were inadequate was "an allegation that appellee county employees were negligent in their performance of a discretionary act." Woodard, 456 S.E.2d at 584.  The court added,

> The decision on whether to adopt other or additional inspection and maintenance procedures "is left to [their] personal judgment and is therefore discretionary and not ministerial. Although a public official is liable for damages to those injured by his omissions in performing ministerial duties, he is only liable for errors in the exercise of discretionary duties if his acts are wilful, malicious, or corrupt.  [Cit.]  While the adoption of more efficient procedures may be beneficial, we do not believe that [the county employees']

19

> failure to implement different procedures amounts to such wilfulness or corruption of office . . . . [Their] decisions in adopting procedures should not be considered in determining [their] liability."

Id.  (quoting Nelson, 290 S.E.2d at 919.)

Here, the evidence shows that the procedure employed by the County for maintaining its road signs was to repair them after receiving reports of problems from members in the community.   Certainly, as in Woodard, more efficient procedures would have been beneficial.  However, the implementation of a more thorough procedure for the installation and upkeep of traffic-control devices is not, as Plaintiffs maintain, a simple ministerial duty because it is not a "simple, absolute, and definite" task "requiring merely the execution of a specific duty."   Happoldt, 567 S.E.2d at 382.   Instead, the implementation of a more thorough procedure calls for personal deliberation and judgment from the very start, in first deciding whether the current procedures are adequate to satisfy the County's obligations and later in determining what additional inspection and maintenance procedures to put in place, if any.

Plaintiffs argue, nevertheless, that implementing a maintenance policy was a ministerial act because the County was required by MUTCD, as adopted by the Department of Transportation, to implement a schedule for inspecting cleaning and replacing the signs and that the failure to implement such a schedule was a failure to comply with a mandatory ministerial duty, thereby subjecting the individual defendants to liability if their failure to perform such duties was negligent.  The recent decision of the court of appeals in Bajjani v. Gwinnett County Sch. Dist., 630 S.E.2d 103 (Ga. Ct. App. 2006), lends some support to

Plaintiffs' position.

In <u>Bajjani</u>, the court held that the preparation of a school safety plan addressing security issues is a mandatory ministerial duty required by O.C.G.A. § 20-2-1185. The Court noted, however, that the development of the contents of the plan embraced discretionary functions. In <u>Bajjani</u>, however, the court found that the absence of the school's plan from the record precluded a determination as to whether the school district's plan adequately addressed security issues as required by § 20-2-1185.

The Court finds that this case is distinguishable from <u>Bajjani</u> in at least one critical respect. Unlike in <u>Bajjani</u>, where the requirement of a plan was mandated by § 20-2-1185, the language of MUTCD is merely suggestive, stating only, for example, that a schedule *should* be established. Thus, this Court is not convinced that MUTCD imposed a mandatory ministerial duty on the County to implement a plan for maintaining its traffic signs more aggressive than the one that was in place on July 28, 2003. Absent more specific direction from the Georgia General Assembly, the Court declines to impose such a duty on the counties of the State of Georgia. Therefore, the Court concludes that with respect to the implementation of a plan for maintenance of the Irwin County roads, the individual Defendants are not liable for the negligent performance of, or negligent failure to perform a ministerial function.

**b.     Discretionary Function**

Plaintiffs argue in the alternative that, to the extent Defendants' acts were discretionary, Defendants are not entitled to immunity because they acted with malice

or intent to injure in the performance of their official functions.  In the first case to construe the term "actual malice" in the context of official immunity, the Supreme Court of Georgia held that the term "actual malice" requires deliberate intention to do wrong.  <u>Merrow v. Hawkins</u>, 467 S.E.2d 336, 337 (Ga. 1996).  In <u>Merrow</u>, the court rejected the trial court's decision to interpret the words "actual malice" to include a "reckless disregard for the safety of others."  <u>Id.</u>  In reaching its result, the court emphasized that Paragraph IX(d) used the term "actual malice" rather than mere "malice" and, as such, was more akin to the "express malice" or "malice in fact" found in criminal law.  <u>Id.</u> at 338.  The court expressly rejected liability against officers and employees acting with implied malice in the performance of their official functions.  <u>Id.</u>

Since the decision in <u>Merrow</u>, the Supreme Court of Georgia has continued to impose a heavy burden on plaintiffs seeking to recover against government officers under a theory of actual malice.  In <u>Kidd v. Coates</u>, 518 S.E.2d 124 (Ga. 1999), the court emphasized the distinction between "actual intent to cause injury, which the court construed to mean "an actual intent to cause harm to the plaintiff" and an intent to do the act resulting in the injury.  The court concluded that merely intending to commit the act that results in injury is not sufficient; a plaintiff must also show that the defendant intended the harm that followed from the act.  <u>Id.</u> at 125.  Also in 1999, in <u>Adams v. Hazelwood</u>, 520 S.E.2d 896, 898 (Ga. 1999), the supreme court rejected "the position that proof of 'ill will' is itself enough to establish actual malice under Art. I, Sec. II, Par. IX (d)."  The court reaffirmed its result in <u>Merrow</u> and reiterated that "in the context of official immunity, actual malice means a deliberate

intention to do a wrongful act."  Id.

Given the definition of "actual malice" set out by the Supreme Court of Georgia in Merrow, as reaffirmed in Kidd and Adams, this Court rejects the argument put forth by Plaintiffs that Defendants' failure to implement a maintenance plan in accordance with MUTCD gives rise to a showing of actual malice.  Defendants concede that at the time of the accident they were unaware of the MUTCD.  (Defs.' Statement of Material Facts No. 7.) Thus, their failure to comply with its standards can in no way be deemed a deliberate intent to do a wrongful act.  Nor have Plaintiffs offered any evidence that Defendants' knew of the condition of the sign, yet ignored the risks that it presented to Jason Holland or any other driver on Big Creek Road.  In sum, there is no evidence before the Court that would sustain a claim that Defendants acted "with actual malice or with actual intent to cause injury" as those terms are used in Paragraph IX(d) and defined by the Georgia courts.  Accordingly, the individual Defendants are entitled to official immunity from liability as to the state law claims against them.

## III.   CONCLUSION

The Court finds that Plaintiffs have failed to allege the violation of rights secured by federal law. Therefore all Defendants are entitled to summary judgment as to the federal claims brought against them pursuant to 42 U.S.C.A. § 1983.  Furthermore, the state law claims brought against the individual Defendants in their official capacities and, consequently, against the County, are barred by the doctrine of sovereign immunity.  Finally, the Court finds that Plaintiffs have failed to show that the individual Defendants were

23

negligent in the performance of, or negligently failed to perform ministerial functions, and further failed to show that the individual Defendants performed their discretionary duties with actual malice or actual intent to cause injury.  Accordingly the individual Defendants are entitled to summary judgment as to the state law claims brought against them in their individual capacities.  In view of the foregoing, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment.  There being no further claims remaining, the Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this the 16th day of August, 2006.


**s/   Hugh Lawson**
**HUGH LAWSON, JUDGE**

mls